## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, | Case No. _____ |
| Plaintiff, | |
| v. | |
| SABER HEALTHCARE GROUP; SABER HEALTH; NORTHERN HEALTH FACILITIES, INC.; TREMONT HEALTH & REHABILITATION CENTER; TREMONT HEALTH & REHABILITATION CENTER, LLC; OAK HRC TREMONT LLC; TREMONT HEALTH RE 1 LP; FCE HWD OSTRICH GP 1, LLC; TREMONT HEALTH SYSTEMS, INC., | |
| Defendants. | |

## COMPLAINT

## PARTIES

1.     Plaintiff, Jane Doe (hereinafter "Plaintiff" or "Ms. Doe"), is an adult individual and current resident of the Commonwealth of Pennsylvania, who currently resides at ████████████████████████.  Plaintiff is requesting to proceed anonymously and her address has been redacted.  On this same date, Plaintiff has filed a Motion to Proceed Anonymously and Memorandum of Law in support of her request.

2.      Defendant, Saber Healthcare Group, and/or Defendant, Saber Health, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a headquarters and principal place of business located at 23700 Commerce Park Rd, Beachwood, Ohio 44122.

3.      It is believed and therefore averred that Defendant, Saber Healthcare Group, and/or Defendant, Saber Health, was, at all times relevant hereto, Plaintiff's employer, joint employer, co-employer, ostensible employer, and/or the agent of Plaintiff's employer.

4.      Defendant, Northern Health Facilities, Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 111 West Michigan Street, Milwaukee, Wisconsin 53203.  At all times relevant hereto, it is believed and therefore averred that the Defendant, Northern Health Facilities, Inc., was the Plaintiff's employer, joint employer, co-employer, ostensible employer, and/or the agent of Plaintiff's employer.

5.      Defendant, Tremont Health & Rehabilitation Center; Tremont Health & Rehabilitation Center, LLC; Oak HRC Tremont LLC; Tremont Health RE 1 LP; FCE HWD Ostrich GP 1, LLC; and/or Tremont Health Systems, Inc.; each consist of a corporation organized and existing under the Commonwealth of Pennsylvania, with a principal place of business at 44 Donaldson Road, Tremont, PA 17981.  At

all times relevant hereto, it is believed and therefore averred that these Defendants were the Plaintiff's employer.

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

7.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over any state-law claims as those claims arise out of the same set of operative facts as the federal claims.

8.     This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Company v. State of Washington, 326 U.S. 310 (1945), and its progeny.

9.     Venue is proper under Title VII pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices are "alleged to have been committed" in this judicial district, "the employment records relevant to such practice[s] are maintained and administered" in this judicial district, and Plaintiff "would have worked" in this judicial district "but for the alleged unlawful employment practice[s]." 42 U.S.C. § 2000e-5(f)(3).

10.     At all times relevant hereto, Defendants each employed fifteen (15) or more persons for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.     Plaintiff has exhausted all applicable administrative remedies and the pertinent notice of right-to-sue in this matter is attached hereto as Exhibit "A." Plaintiff's name and address have been redacted from Exhibit "A," and a Motion to Proceed Anonymously and Brief in support thereof have been filed on today's date, requesting the ability for Plaintiff to proceed under the pseudonym, "Jane Doe," in the instant litigation, and for Plaintiff to be permitted to redact her home address from the pleadings.

## THE END FORCED ARBITRATION OF SEXUAL ASSAULT AND SEXUAL HARASSMENT ACT, 9 U.S.C. §§ 402(a), 401(4) ("EFAA"), APPLIES TO THIS CASE

12.     On September 23, 2023, Plaintiff's Counsel contacted Defense Counsel to seek concurrence regarding Plaintiff's Motion to Proceed Anonymously in this litigation.  Defense Counsel responded on September 25, 2023, did not state whether or not Counsel concurred in the Motion, and, for the first time in this case, alerted Plaintiff's Counsel to the existence of an alleged arbitration agreement.

13.     However, the End Forced Arbitration of Sexual Assault and Sexual Harassment Act, 9 U.S.C. §§ 402(a), 401(4) (hereinafter "EFAA"), applies to this

case because Ms. Doe brings claims of harassment based on sexual orientation and gender non-conformity, and assault based on sexual orientation and gender non-conformity.

14.     In light of the Supreme Court of the United States' recent decision in the Title VII context that "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex," see Bostock v. Clayton Cnty., Ga., 590 U.S. ___, 140 S. Ct. 1731, 1741 (2020), Ms. Doe has sufficiently alleged sex-based assault and harassment under the EFAA. Bostock further held that when an employer discriminates based on sexual orientation, the employer "necessarily and intentionally discriminates against that individual in part because of sex.  And that is all Title VII has ever demanded to establish liability."  Bostock, 140 S. Ct. at 1744.

15.     The Defendants' failure to act after Ms. Doe was assaulted—the Complaint alleges herein that one (1) instance of assault based on an employee's sexual orientation or gender non-conformity is severe enough to constitute workplace harassment in violation of Title VII—and the failure to take action to correct the harassment including both hostile-environment harassment, and harassment from a supervisor resulting in tangible employment action, these claims, in point of fact, constitute the gravamen of Ms. Doe's case.

16.    Regardless, "as long as the claim of sexual harassment pends in a case, the EFAA, by its terms, blocks arbitration of the entire 'case' containing that claim." Yost v. Everyrealm, Inc., _____ F. Supp. 3d _____, 2023 WL 2224450, at *17 (S.D.N.Y. Feb. 24, 2023); see also Johnson v. Everyrealm, Inc., No. 22 Civ. 6669 (PAE), _____ F. Supp. 3d _____, 2023 WL 2216173 (S.D.N.Y. Feb. 24, 2023); 9 U.S.C. § 402(a) (language of Section 402(a) of the EFAA provides that no pre-dispute arbitration agreement shall be enforceable "with respect to a **case** which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute") (emphasis added).  Plaintiff brought each of these arguments to Defendants' attention and Defendants have provided no response to these arguments.

17.    As Ms. Doe has sufficiently alleged assault and harassment based on her sexual orientation and gender non-conformity, according to the EFAA she may bring a civil action in court rather than be forced into arbitration.

## CLAIMS FOR RELIEF

**COUNT I:**
**HARASSMENT/HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"),**
**42 U.S.C. § 2000*e*, et seq.**
**(Plaintiff, Jane Doe v. Defendants, Saber Healthcare Group; Saber Health; Northern Health Facilities, Inc.; Tremont Health & Rehabilitation Center; Tremont Health & Rehabilitation Center, LLC; Oak HRC Tremont LLC; Tremont Health RE 1 LP; FCE HWD Ostrich GP 1, LLC; Tremont Health Systems, Inc.)**

18.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

19.     Ms. Doe began employment with Defendants on or about September 2022 as a certified nursing assistant.

20.     Ms. Doe is a person of color and a lesbian woman.

21.     Ms. Doe was subjected to a hostile work environment on account of her race, sex, sexual orientation, and gender non-conformity.

22.     In or around October 2022, Ms. Doe was working at the same time as Ranell Last Name Unknown ("LNU"), who was the Licensed Practical Nurse ("LPN") responsible for the hall in which Ms. Doe was working at the relevant time.  Ms. Doe was having a conversation with another employee, not the supervisor, Ranell LNU, when Ms. Doe mentioned offhand that she had a "fiancé." When referring to her partner, Ms. Doe happened to use female gender pronouns. Ranell LNU overheard the conversation and interjected where both Ms. Doe and the other employee could hear, stating, "I don't believe in gay marriage," or words to that effect.

23.     Ranell LNU had supervisory/managerial authority over Ms. Doe's day-to-day activities as the LPN responsible for the hall in which Plaintiff was working at the relevant time and therefore Ranell LNU constitutes a supervisor

7

under Title VII.  Defendants did not dispute this contention before the Equal

Employment Opportunity Commission ("EEOC").

24.     Following the above conduct by Ranell LNU, Ms. Doe was treated

differently than other similarly situated heterosexual employees, on account of Ms.

Doe's sexual orientation, when the Defendants canceled Ms. Doe for full-time

shifts on multiple occasions without providing an explanation.  Ms. Doe lost pay as

a result on account of discrimination.  Defendants discriminated against Ms. Doe

with respect to her compensation.

25.     Ms. Doe should have been a priority for scheduling shifts, like other

similarly situated heterosexual CNA employees of Defendants, over both PRN and

agency employees.  However, the Defendants regularly cancelled Ms. Doe for the

shifts for which she was supposed to be scheduled as a priority, without an

explanation, which then went to PRN or to agency employees, even though Ms.

Doe was an employee who should have received priority scheduling over the other

employees.  Ms. Doe should have kept the shifts instead of the other employees.

26.     Ms. Doe is lesbian and gender non-conforming.  On or about

December 11, 2022, one of the Defendants' residents hit Ms. Doe.  The resident is

heterosexual.  The assault alone was severe enough to constitute harassment in

violation of Title VII.

27.     Ms. Doe reported being assaulted on the same date, December 11, 2022, to Ranell LNU, who laughed at Ms. Doe.

28.     Ms. Doe also recollects that she filed a report with Ms. Jackie Robinson, Nursing Home Administrator, about Ms. Doe being assaulted.  Ms. Robinson took no action to address the harassment.

29.     On or about December 13, 2022, Ericka (sp.) Last Name Unknown ("LNU"), another nursing assistant, stated to Ms. Doe, "I heard the resident whooped your ass" (hereinafter, "a--"), and, "Everybody was talking about it," or words to that effect.

30.     Defendants did not provide prompt or appropriate action to prevent, correct, and remedy harassment, of which Defendants had actual knowledge, permitting the hostile work environment complained of by Ms. Doe to be allowed to continue.

31.     On or about December 13, 2022, Ms. Doe was required to bring a tray to the resident and the resident stated to Ms. Doe, "A brownie for a brownie," or words to that effect.  Ms. Doe is a person of color.

32.     Ms. Doe attended a meeting with Nursing Home Administrator, Jackie Robinson, on December 13, 2022.  At that time Ms. Doe brought up her mistreatment at the facility to Ms. Robinson.

33.     Respondents' Nursing Home Administrator, Ms. Robinson, who is heterosexual, stated in response to Ms. Doe, on or about December 13, 2022, "You're going to resign," or words to that effect.  Ms. Doe did not resign.

34.     Defendants took tangible employment action against Ms. Doe on or about December 13, 2022 on account of Ms. Doe's race, sex, sexual orientation, and gender non-conformity.

35.     Ms. Doe recollects she requested to be on the schedule multiple times in December 2022, including, to the best of her recollection, on or about December 16th, 19th, 20th, and 21st, 2022, and Ms. Doe was informed that she was not permitted to pick up shifts.

36.     Defendants took tangible employment action against Ms. Doe on or about December 16th, 19th, 20th, and 21st 2022 on account of Ms. Doe's race, sex, sexual orientation, and gender non-conformity.

37.     Defendants retaliated against Ms. Doe by challenging Ms. Doe's unemployment, which Ms. Doe had previously received unchallenged, after Ms. Doe filed an EEOC Charge of Discrimination against Defendants.  Defendants did not attend the unemployment compensation hearing.  Ms. Doe received unemployment over Defendants' objection.  Ms. Doe suffered materially adverse action from Defendants constituting post-employment retaliation.

38.     Defendants did not provide prompt or appropriate action to prevent, correct, and remedy a hostile work environment of which Defendants knew or should have known.

39.     Defendants acceded to the resident who mistreated Ms. Doe on account of her race, sex, sexual orientation, and gender non-conformity.

40.     A motivating factor in the resident's mistreatment of Ms. Doe was on account of Ms. Doe's race, sex, sexual orientation, and gender non-conformity.

**WHEREFORE**, Plaintiff, Ms. Doe, demands judgment in her favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Ms. Doe for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Ms. Doe would have received; compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Ms. Doe, equitable/injunctive relief requiring Defendants to conduct sensitivity training for all of Defendants' employees; and such other and further relief that this Court deems just, proper, and equitable.

**COUNT II:**
**WRONGFUL DISCHARGE/TERMINATION IN VIOLATION OF TITLE**
**VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, <u>et seq.</u>**
**(Plaintiff, Jane Doe v. Defendants, Saber Healthcare Group; Saber Health;**
**Northern Health Facilities, Inc.; Tremont Health & Rehabilitation Center;**
**Tremont Health & Rehabilitation Center, LLC; Oak HRC Tremont LLC;**
**Tremont Health RE 1 LP; FCE HWD Ostrich GP 1, LLC; Tremont Health**
**<u>Systems, Inc.)</u>**

41.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

42.     Plaintiff, Ms. Doe, was wrongfully discharged/terminated on account of her race, sex, sexual orientation, and gender non-conformity.

43.     Ms. Doe began employment with Defendants on or about September 2022 as a certified nursing assistant.

44.     Ms. Doe was certified or licensed and was qualified for the position she held.

45.     Ms. Doe is a person of color and a lesbian woman.

46.     In or around October 2022, Ms. Doe was working at the same time as Ranell Last Name Unknown ("LNU"), who was the LPN responsible for the hall in which Ms. Doe was working at the time.  At the time, Ms. Doe was having a conversation with another employee, not the supervisor, Ranell LNU, when Ms. Doe mentioned offhand that she had a "fiancé."  When referring to her partner, Ms. Doe happened to use female gender pronouns.  Ranell LNU overheard the

conversation and interjected where both Ms. Doe and the other employee heard, stating, "I don't believe in gay marriage," or words to that effect.

47.    Ranell LNU had supervisory/managerial authority over Ms. Doe's day-to-day activities as the LPN responsible for the hall in which Ms. Doe was working at the relevant time and therefore Ranell LNU constitutes a supervisor under Title VII.  Defendants did not dispute this contention before the EEOC.

48.    Ms. Doe is lesbian and gender non-conforming.  On or about December 11, 2022, one of the Defendants' residents hit Ms. Doe.  The resident is heterosexual.

49.    Ms. Doe reported being assaulted on the same date, December 11, 2022, to Ranell LNU, who laughed at Ms. Doe.

50.    Ms. Doe also recollects that she filed a report with Ms. Jackie Robinson, Nursing Home Administrator, about Ms. Doe being assaulted.  Ms. Robinson took no action to address the harassment.

51.    On or about December 13, 2022, Ericka (sp.) Last Name Unknown ("LNU"), another nursing assistant, stated to Ms. Doe, "I heard the resident whooped your a--," and, "Everybody was talking about it," or words to that effect.

52.    On or about December 13, 2022, Ms. Doe was required to bring a tray to the resident and the resident stated to Plaintiff, "A brownie for a brownie," or words to that effect.  Ms. Doe is a person of color.

53.     Ms. Doe attended a meeting with Nursing Home Administrator, Jackie Robinson, on December 13, 2022.  At that time Ms. Doe brought up her mistreatment at the facility to Ms. Robinson.

54.     Respondents' Nursing Home Administrator, Ms. Robinson, who is heterosexual, stated in response to Ms. Doe, on or about December 13, 2022, "You're going to resign," or words to that effect.  Ms. Doe did not resign.

55.     Defendants wrongfully terminated/discharged Ms. Doe on or about December 13, 2022, on account of her race, sex, sexual orientation, and/or gender non-conformity in violation of Title VII.

56.     Ms. Doe's race, sex, sexual orientation, and/or gender non-conformity were motivating factors in Ms. Doe's discharge by the Defendants in violation of Title VII.

57.     Ms. Doe recollects she requested to be on the schedule multiple times in December 2022, including, to the best of her recollection, on or about December 16th, 19th, 20th, and 21st, 2022, and Ms. Doe was informed that she was not permitted to pick up shifts.

58.     Defendants acceded to the resident who mistreated Ms. Doe on account of her race, sex, sexual orientation, and gender non-conformity.

59.     It is believed and therefore averred that Defendants replaced Ms. Doe with an employee who is heterosexual.

60.     It is believed and therefore averred that Defendants replaced Ms. Doe with an employee who is not gender non-conforming.

**WHEREFORE**, Plaintiff, Ms. Doe, demands judgment in her favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Ms. Doe for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Ms. Doe would have received; compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Ms. Doe, equitable/injunctive relief requiring Defendants to conduct sensitivity training for all of Defendants' employees; and such other and further relief that this Court deems just, proper, and equitable.

**COUNT III:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000*e*, <u>et seq.</u>**
**(Plaintiff, Jane Doe v. Defendants, Saber Healthcare Group; Saber Health;**
**Northern Health Facilities, Inc.; Tremont Health & Rehabilitation Center;**
**Tremont Health & Rehabilitation Center, LLC; Oak HRC Tremont LLC;**
**Tremont Health RE 1 LP; FCE HWD Ostrich GP 1, LLC; Tremont Health**
**<u>Systems, Inc.</u>)**

61.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

62.     Ms. Doe was terminated/discharged by Defendants in retaliation for Ms. Doe's protected conduct/activity in violation of Title VII.

63.     In or around October 2022, Ms. Doe was working at the same time as Ranell Last Name Unknown ("LNU"), who was the LPN responsible for the hall in which Ms. Doe was working at the time.  At the time, Ms. Doe was having a conversation with another employee, not the supervisor, Ranell LNU, when Ms. Doe mentioned offhand that she had a "fiancé."  When referring to her partner, Ms. Doe happened to use female gender pronouns.  Ranell LNU overheard the conversation and interjected where both Ms. Doe and the other employee heard, stating, "I don't believe in gay marriage," or words to that effect.

64.     Ranell LNU had supervisory/managerial authority over Ms. Doe's day-to-day activities as the LPN responsible for the hall in which Ms. Doe was working at the relevant time and therefore Ranell LNU constitutes a supervisor under Title VII.  Defendants did not dispute this contention before the EEOC.

65.     Following the above conduct by Ranell LNU, Ms. Doe was treated differently than other similarly situated employees when the Defendants canceled Ms. Doe for full-time shifts on multiple occasions without providing an explanation.

66.     Ms. Doe should have been a priority for scheduling shifts, like other similarly situated heterosexual CNA employees of Defendants, over both PRN and

agency employees.  However, the Defendants regularly cancelled Ms. Doe for the shifts for which she was to be scheduled, without an explanation, which then went to PRN or to agency employees, even though Ms. Doe was an employee who should have received priority scheduling over these employees.  Ms. Doe should have kept the shifts instead of the other employees.

67.     Ms. Doe is lesbian and gender non-conforming.  On or about December 11, 2022, one of the Defendants' residents hit Ms. Doe.  The resident is heterosexual.  The assault was severe enough to constitute harassment in violation of Title VII.

68.     Ms. Doe reported being assaulted on the same date, December 11, 2022, to Ranell LNU, who laughed at Ms. Doe.

69.     Ms. Doe also recollects that she filed a report with Ms. Jackie Robinson, Nursing Home Administrator, about Ms. Doe being assaulted.  Ms. Robinson took no action to address the harassment.

70.     On or about December 13, 2022, Ericka (sp.) Last Name Unknown ("LNU"), another nursing assistant, stated to Ms. Doe, "I heard the resident whooped your a--," and, "Everybody was talking about it," or words to that effect.

71.     On or about December 13, 2022, Ms. Doe was required to bring a tray to the resident and the resident stated to Ms. Doe, "A brownie for a brownie," or words to that effect.  Ms. Doe is a person of color.

72.     Ms. Doe attended a meeting with Nursing Home Administrator, Jackie Robinson, on December 13, 2022.  At that time Ms. Doe brought up her mistreatment at the facility to Ms. Robinson.

73.     Respondents' Nursing Home Administrator, Ms. Robinson, who is heterosexual, stated in response to Ms. Doe, on or about December 13, 2022, "You're going to resign," or words to that effect.  Ms. Doe did not resign.

74.     Defendants terminated Ms. Doe on or about December 13, 2022 in retaliation for her protected conduct/activity in violation of Title VII.

75.     Ms. Doe recollects she requested to be on the schedule multiple times in December 2022, including, to the best of her recollection, on or about December 16th, 19th, 20th, and 21st, 2022, and Ms. Doe was informed that she was not permitted to pick up shifts, in retaliation for her protected conduct/activity in violation of Title VII.

76.     Defendants further retaliated against Ms. Doe by challenging Ms. Doe's unemployment, which Ms. Doe had previously received unchallenged, after Ms. Doe filed an EEOC Charge of Discrimination against Defendants.  Defendants did not attend the unemployment compensation hearing.  Ms. Doe received unemployment over Defendants' objection.  Ms. Doe suffered materially adverse action from Defendants constituting post-employment retaliation.

77.     But for the Defendants' retaliation against Ms. Doe, Ms. Doe would have retained her employment with the Defendants and would not have lost pay.

78.     Defendants retaliated against Ms. Doe by terminating her for her report of assault by the resident.  The assault alone was severe enough to constitute harassment in violation of Title VII.  Defendants did not transfer the resident and instead illegally retaliated against Ms. Doe by discharging Ms. Doe from her employment due to her report.

79.     Defendants retaliated against Ms. Doe by terminating her for her complaints of harassment.

**WHEREFORE**, Plaintiff, Ms. Doe, demands judgment in her favor and against Defendants, individually and/or jointly and severally, in an amount in excess of $150,000.00, which will fully and fairly compensate Ms. Doe for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Ms. Doe would have received; compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; equitable/injunctive relief requiring Defendants to provide a neutral employment reference for Ms. Doe; equitable/injunctive relief requiring Defendants to conduct sensitivity training for all of Defendants' employees; and such other and further relief that this Court deems just, proper, and equitable.

19

**COUNT IV:**
**COMPENSATION DISCRIMINATION BASED ON SEXUAL**
**ORIENTATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS**
**ACT OF 1964, 42 U.S.C. § 2000*e*, <u>et seq.</u>**
**(Plaintiff, Jane Doe v. Defendants, Saber Healthcare Group; Saber Health;**
**Northern Health Facilities, Inc.; Tremont Health & Rehabilitation Center;**
**Tremont Health & Rehabilitation Center, LLC; Oak HRC Tremont LLC;**
**Tremont Health RE 1 LP; FCE HWD Ostrich GP 1, LLC; Tremont Health**
**<u>Systems, Inc.</u>)**

80.     All of the foregoing paragraphs are hereby incorporated as if the same

were more fully set forth herein at length.

81.     In or around October 2022, Ms. Doe was working at the same time as

Ranell Last Name Unknown ("LNU"), who was the LPN responsible for the hall in

which Ms. Doe was working at the time.  At the time, Ms. Doe was having a

conversation with another employee, not the supervisor, Ranell LNU, when Ms.

Doe mentioned offhand that she had a "fiancé."  When referring to her partner, Ms.

Doe happened to use female gender pronouns.  Ranell LNU overheard the

conversation and interjected where both Ms. Doe and the other employee heard,

stating, "I don't believe in gay marriage," or words to that effect.

82.     Following the above conduct by Ranell LNU, Ms. Doe was treated

differently than other similarly situated heterosexual employees, on account of Ms.

Doe's sexual orientation, when the Defendants canceled Ms. Doe for full-time

shifts on multiple occasions without providing an explanation.  Ms. Doe lost pay as

a result on account of discrimination.  Defendants discriminated against Ms. Doe with respect to her compensation.

83.     Ms. Doe should have been a priority for scheduling shifts, like other similarly situated heterosexual CNA employees of Defendants, over both PRN and agency employees.  However, the Defendants regularly cancelled Ms. Doe for the shifts for which she was to be scheduled as a priority, without an explanation, which then went to PRN or to agency employees, even though Ms. Doe was an employee who should have received priority scheduling over these employees.  Ms. Doe should have kept the shifts instead of the other employees.

84.     Ms. Doe recollects she requested to be on the schedule multiple times in December 2022, including, to the best of her recollection, on or about December 16th, 19th, 20th, and 21st, 2022, and Ms. Doe was informed that she was not permitted to pick up shifts.

85.     Ms. Doe was compensated less by Defendants than other similarly-situated heterosexual employees who held the same position or substantially the same position as Ms. Doe on account of discrimination due to her sexual orientation and gender non-conformity.

86.     Ms. Doe was not compensated like her heterosexual counterparts on account of discrimination due to Ms. Doe's sexual orientation and gender non-conformity.

87.     Ms. Doe was not provided pay at her highest appropriate rate of pay on account of discrimination due to Ms. Doe's sexual orientation and gender non-conformity.

88.     Ms. Doe was not provided higher pay by Defendants on account of Ms. Doe's sexual orientation and gender non-conformity.

89.     The Lilly Ledbetter Fair Pay Act of 2009 extends to sexual orientation discrimination, under <u>Bostock v. Clayton County, Georgia</u>, 590 U.S. ___, 140 S. Ct. 1731, 207 L.Ed.2d 218 (2020), which held that sexual orientation discrimination forms a cognizable claim of sex discrimination under Title VII.

90.     Under the Lilly Ledbetter Fair Pay Act of 2009, Ms. Doe may recover lost wages, benefits, and other compensation, for any period of time in which Ms. Doe was "affected by [the] application of a discriminatory compensation decision or other discriminatory practice, including each time wages, benefits, or other compensation is paid, resulting in whole or part from such discriminatory decision or practice." <u>See</u> Notice Concerning the Lilly Ledbetter Fair Pay Act of 2009.

**WHEREFORE**, Plaintiff, Ms. Doe, demands judgment in her favor and against Defendants, individually and/or jointly and severally, in an amount which will fully and fairly compensate Ms. Doe for any and all back pay, benefits, and any other compensation Ms. Doe would have received; punitive damages; pre- and post-

judgment interest, reasonable attorneys' fees; costs of suit; and such other and further relief this Court determines to be just, proper, and equitable.

**COUNT V:**
**COMPENSATION DISCRIMINATION BASED ON SEXUAL ORIENTATION IN VIOLATION OF THE EQUAL PAY ACT ("EPA"), 29 U.S.C. § 206**
**(Plaintiff, Jane Doe v. Defendants, Saber Healthcare Group; Saber Health; Northern Health Facilities, Inc.; Tremont Health & Rehabilitation Center; Tremont Health & Rehabilitation Center, LLC; Oak HRC Tremont LLC; Tremont Health RE 1 LP; FCE HWD Ostrich GP 1, LLC; Tremont Health Systems, Inc.)**

91.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

92.    The Equal Pay Act applies to sexual orientation, as sexual orientation discrimination constitutes a cognizable form of sex discrimination under Bostock v. Clayton County, Georgia, 590 U.S. ___, 140 S. Ct. 1731, 207 L.Ed.2d 218 (2020).

93.    The Equal Pay Act prohibits compensation discrimination based on sexual orientation between individuals working at the same establishment who are performing under similar working conditions.

94.    Plaintiff was working at the same establishment and under the same or similar working conditions as other similarly-situated heterosexual CNA employees of Defendants, PRN employees, and agency employees.

95.     In or around October 2022, Ms. Doe was working at the same time as Ranell Last Name Unknown ("LNU"), who was the LPN responsible for the hall in which Ms. Doe was working at the time.  At the time, Ms. Doe was having a conversation with another employee, not the supervisor, Ranell LNU, when Ms. Doe mentioned offhand that she had a "fiancé."  When referring to her partner, Ms. Doe happened to use female gender pronouns.  Ranell LNU overheard the conversation and interjected where both Ms. Doe and the other employee heard, stating, "I don't believe in gay marriage," or words to that effect.

96.     Following the above conduct by Ranell LNU, Ms. Doe was treated differently than other heterosexual employees, on account of Ms. Doe's sexual orientation, when the Defendants canceled Ms. Doe for full-time shifts on multiple occasions without providing an explanation.  Ms. Doe lost pay as a result on account of discrimination.  Defendants discriminated against Ms. Doe with respect to her compensation.

97.     Ms. Doe should have been a priority for scheduling shifts, like other similarly situated heterosexual CNA employees of Defendants, over both PRN and agency employees.  However, the Defendants regularly cancelled Ms. Doe for the shifts for which she was supposed to be scheduled as a priority, without an explanation, which then went to PRN or to agency employees, even though Ms.

Doe was an employee who should have received priority scheduling over these employees.  Ms. Doe should have kept the shifts instead of the other employees.

98.    Ms. Doe recollects she requested to be on the schedule multiple times in December 2022, including, to the best of her recollection, on or about December 16th, 19th, 20th, and 21st, 2022, and Ms. Doe was informed that she was not permitted to pick up shifts.

99.    Ms. Doe was compensated less by Defendants than other similarly-situated heterosexual employees who held the same position or substantially the same position as Ms. Doe on account of discrimination due to her sexual orientation and gender non-conformity.

100.   Ms. Doe was not compensated like her heterosexual counterparts on account of discrimination due to Ms. Doe's sexual orientation and gender non-conformity.

101.   Ms. Doe was not provided pay at her highest appropriate rate of pay on account of discrimination due to Ms. Doe's sexual orientation and gender non-conformity.

102.   Ms. Doe was not provided higher pay by Defendants on account of Ms. Doe's sexual orientation and gender non-conformity.

103.   Defendants' actions were committed in bad faith and therefore Ms. Doe is entitled to and hereby claims liquidated damages in the amount of double

the back-pay award on account of Defendants' discriminatory and bad-faith

conduct against her.

**WHEREFORE,** Plaintiff, Ms. Doe, demands judgment in her favor and

against Defendants, individually and/or jointly and severally, in an amount which

will fully and fairly compensate Ms. Doe for any and all damages permitted under

the Equal Pay Act, including but not limited to back pay; interest; reasonable

attorneys' fees; costs of the action; liquidated damages in the amount of double the

back-pay award on account of Defendants' bad faith; and any and all further relief

this Court determines to be just, proper, and equitable.

### COUNT VI:
### COMPENSATION DISCRIMINATION BASED ON SEXUAL ORIENTATION IN VIOLATION OF THE PENNSYLVANIA EQUAL PAY LAW ("EPL"), 43 P.S. § 336
### (Plaintiff, Jane Doe v. Defendants, Saber Healthcare Group; Saber Health; Northern Health Facilities, Inc.; Tremont Health & Rehabilitation Center; Tremont Health & Rehabilitation Center, LLC; Oak HRC Tremont LLC; Tremont Health RE 1 LP; FCE HWD Ostrich GP 1, LLC; Tremont Health Systems, Inc.)

104.   All of the foregoing paragraphs are hereby incorporated as if the same

were more fully set forth herein at length.

105.   The Pennsylvania Equal Pay Law applies to sexual orientation, as

sexual orientation discrimination constitutes a cognizable form of sex

discrimination under Bostock v. Clayton County, Georgia, 590 U.S. ___, 140 S.

Ct. 1731, 207 L.Ed.2d 218 (2020).

106.   The Pennsylvania Equal Pay Law prohibits compensation discrimination based on sexual orientation between individuals working at the same establishment who are performing under similar working conditions.

107.   Ms. Doe was working at the same establishment and under the same or similar working conditions as other similarly-situated heterosexual CNA employees of Defendants, PRN employees, and agency employees.

108.   In or around October 2022, Ms. Doe was working at the same time as Ranell Last Name Unknown ("LNU"), who was the LPN responsible for the hall in which Ms. Doe was working at the time.  At the time, Ms. Doe was having a conversation with another employee, not the supervisor, Ranell LNU, when Ms. Doe mentioned offhand that she had a "fiancé."  When referring to her partner, Ms. Doe happened to use female gender pronouns.  Ranell LNU overheard the conversation and interjected where both Ms. Doe and the other employee heard, stating, "I don't believe in gay marriage," or words to that effect.

109.   Following the above conduct by Ranell LNU, Ms. Doe was treated differently than other similarly situated heterosexual employees, on account of Ms. Doe's sexual orientation, when the Defendants canceled Ms. Doe for full-time shifts for which she was supposed to be scheduled as a priority, on multiple occasions, without providing an explanation.  Ms. Doe lost pay as a result on

account of discrimination.  Defendants discriminated against Ms. Doe with respect to her compensation.

110.   Ms. Doe should have been a priority for scheduling shifts, like other similarly situated heterosexual CNA employees of Defendants, over both PRN and agency employees.  However, the Defendants regularly cancelled Ms. Doe for the shifts for which she was to be scheduled, without an explanation, which then went to PRN or to agency employees, even though Ms. Doe was an employee who should have received priority scheduling over these employees.  Ms. Doe should have kept the shifts instead of the other employees.

111.   Ms. Doe recollects she requested to be on the schedule multiple times in December 2022, including, to the best of her recollection, on or about December 16th, 19th, 20th, and 21st, 2022, and Ms. Doe was informed that she was not permitted to pick up shifts.

112.   Ms. Doe was compensated less by Defendants than other similarly-situated heterosexual employees who held the same position or substantially the same position as Ms. Doe on account of discrimination due to her sexual orientation and gender non-conformity.

113.   Ms. Doe was not compensated like her heterosexual counterparts on account of discrimination due to Ms. Doe's sexual orientation and gender non-conformity.

114.   Ms. Doe was not provided pay at her highest appropriate rate of pay on account of discrimination due to Ms. Doe's sexual orientation and gender non-conformity.

115.   Ms. Doe was not provided higher pay by Defendants on account of Ms. Doe's sexual orientation and gender non-conformity.

**WHEREFORE,** Plaintiff, Ms. Doe, demands judgment in her favor and against Defendants, individually and/or jointly and severally, in an amount which will fully and fairly compensate Ms. Doe for any and all damages permitted under the Pennsylvania EPL, including but not limited to back pay; the amount of unpaid wages; an equal amount in liquidated damages; reasonable attorneys' fees; costs of the action; pre- and post-judgment interest; and such other and further relief this Court determines to be just, proper, and equitable.

## <u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,

DATED:  <u>09/28/2023</u>        BY: _Justin F. Robinette_____

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
P.O. Box 15190
Philadelphia, PA 19130-9998
Tel: (267) 595-6254

Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiff*