## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE DOE,** | : | **No. 3:23cv1608** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **SABER HEALTHCARE GROUP;** | : | |
| **SABER HEALTH; NORTHERN** | : | |
| **HEALTH FACILITIES, INC.;** | : | |
| **TREMONT HEALTH &** | : | |
| **REHABILITATION CENTER;** | : | |
| **TREMONT HEALTH &** | : | |
| **REHABILITATION CENTER, LLC;** | : | |
| **OAK HRC TREMONT LLC; TREMONT** | : | |
| **HEALTH RE 1 LP; FCE HWD** | : | |
| **OSTRICH GP 1, LLC; TREMONT** | : | |
| **HEALTH SYSTEMS, INC.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court is a motion to compel arbitration filed by Defendants

Tremont Health & Rehabilitation, LLC and Saber Healthcare Group.  The motion

is fully briefed and ripe for disposition.

## Background

This is an employment discrimination matter filed by Plaintiff Jane Doe

against her former employers.[1] (Doc. 1, Compl.).  Defendants employed plaintiff

---

[1] As discussed below, the court applies a Rule 12(b)(6) standard to defendants' motion to compel arbitration. Consequently, at this stage of the proceedings, the court must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233

as a nursing assistant at a nursing home in Tremont, Schuylkill County, Pennsylvania. (Id. ¶ 19).

Plaintiff is a person of color and a lesbian woman who is gender non-conforming. (Id. ¶¶ 20, 26). Approximately one month into her employment, plaintiff's supervisor, upon learning that plaintiff had a fiancée, interjected in plaintiff's conversation with another employee, stating: "I don't believe in gay marriage." (Id. ¶¶ 19, 22).

Following that statement, plaintiff alleges that defendants began treating her differently, cancelling plaintiff's full-time shifts and assigning them to PRN (as needed) employees and staffing agency workers so that plaintiff would earn less compensation. (Id. ¶¶ 23-25).

On December 11, 2022, a resident at defendants' nursing home assaulted plaintiff. (Id. ¶ 26). Upon plaintiff's reporting of the assault to her supervisor, plaintiff's supervisor laughed at her. (Id. ¶ 27). A report made to the nursing home administrator was not acted upon. (Id. ¶ 28). Another nursing assistant told plaintiff: "I heard the resident whooped your ass[,]" and "Everybody was talking about it[.]" (Id. ¶ 29). Defendants did not assign a different nursing assistant to the resident. Two days later, on December 13, 2022, when plaintiff

---

(3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

brought a meal tray to that same resident, the resident stated to plaintiff: "A brownie for a brownie." (Id. ¶ 31).

Also on December 13, 2022, plaintiff attended a meeting with the nursing home administrator and told the administrator about her mistreatment at the facility. (Id. ¶ 32).  The administrator told her: "You're going to resign." (Id. ¶ 33). Plaintiff did not resign, but she alleges that defendants essentially terminated her as of that date. (Id. ¶¶ 33, 55).  After the meeting, plaintiff requested shifts on December 16, 19, 20, and 21, 2022. (Id. ¶ 35).  Defendants informed her that she was not permitted to pick up those shifts. (Id. ¶ 36).  They also allegedly began challenging plaintiff's receipt of unemployment compensation benefits after plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. (Id. ¶ 37).

Based on this alleged conduct, plaintiff asserts six (6) causes of action against defendants:

- **Count I** – Harassment and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq.*;

- **Count II** – Wrongful discharge/termination in violation of Title VII;

- **Count III** – Retaliatory discharge/termination in violation of Title VII;

- **Count IV** – Compensation discrimination based on sexual orientation in violation of Title VII;

3

- **Count V** – Compensation discrimination based on sexual orientation in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206; and

- **Count VI** - Compensation discrimination based on sexual orientation in violation of the Pennsylvania Equal Pay Law ("PA EPL"), 43 PA. STAT. § 206.

Defendants responded to the complaint with the instant motion to compel arbitration and motion to dismiss. (Doc. 10). Defendants contend that plaintiff's employment was subject to a "Mutual Dispute Resolution Agreement" ("Agreement"), which plaintiff signed prior to employment. (See Doc. 10-1, Redacted Agreement). Per defendants, the Agreement requires the arbitration of plaintiff's Title VII, EPL, and state employment law claims. Plaintiff counters that an amendment to the Federal Arbitration Act ("FAA"), the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. §§ 401-402, invalidates the Agreement. The parties have briefed their respective positions bringing this case to its present posture.

**Jurisdiction**

Based on the alleged violations of federal law, this court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Additionally, the court has jurisdiction under 28 U.S.C. § 1343(a)(3),

which confers jurisdiction of any action commenced to redress the deprivation of any right, privilege, or immunity secured by federal law providing for the equal rights of citizens.  The court has supplemental jurisdiction over plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standards**

### 1. Federal Rule of Civil Procedure 12(b)(6) Applies

Plaintiff avers that the Agreement is subject to the EFAA in the allegations of her complaint. (Doc. 1 ¶¶ 12-17).  Accordingly, the court considers defendants' subsequent motion to compel arbitration under the standard applicable to motions filed pursuant to Federal Rule of Civil Procedure 12(b)(6). See Guidotti v. Legal Helpers Debt Resol., LLC, 716 F.3d 764, 771 (3d Cir. 2013)("when it is apparent, based on the face of a complaint. . .that. . .a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."); Schuchardt v. President of the United States, 839 F.3d 336, 347, n. 7 (3d Cir. 2016)(citations omitted)("a district court. . .is permitted to consider documents

5

*integral to or explicitly relied* upon in the complaint. . .without converting the motion into one for summary judgment.")(citations, internal quotations, and brackets removed)(emphasis in original).

To qualify as a "sexual assault dispute" or "sexual harassment dispute" under the EFAA, a plaintiff's claim must be sufficiently pled to survive a motion to dismiss under Rule 12(b)(6). See Mitura v. Finco Servs., Inc., No. 23-CV-2879 (VEC), --- F. Supp. 3d ----, 2024 WL 232323, at *3 (S.D.N.Y. Jan. 22, 2024) (citations omitted).  Requiring sexual assault and sexual harassment claims to be capable of surviving a Rule 12(b)(6) motion "vindicates the statute's purpose of providing sexual harassment claimants with a judicial forum while also respecting the FAA's well-established mandate that favors arbitration." Id. (citing Yost v. Everyrealm, Inc., 657 F. Supp. 3d 563, 586 (S.D.N.Y. 2023)).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. (citing Twombly, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

6

On a motion filed pursuant to Rule 12(b)(6), district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

### 2. Motions to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), "a contract evidencing a transaction involving commerce to settle by arbitration. . .shall be valid, irrevocable, and enforceable, save upon such grounds. . . as otherwise provided in chapter 4[,]" i.e., the EFAA provisions precluding arbitration in sexual assault or sexual harassment disputes. See 9 U.S.C. §§ 2, 401-402.

"A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003); see also 9 U.S.C. §§ 3, 4. Generally, to compel arbitration under the FAA, a court must conclude that: (1) the parties entered into a valid agreement to arbitrate; and (2) plaintiff's claims fall within the scope of the arbitration agreement. Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 523 (3d Cir. 2009)). In order to compel arbitration where the EFAA may apply, the court must also conclude that the conduct alleged does

7

not constitute a "sexual harassment dispute" or a "sexual assault dispute." See 9 U.S.C. § 402.

**Analysis**

Plaintiff does not contest the validity or enforceability of the arbitration provisions of the Agreement.  But because plaintiff asserts that EFAA applies, the court must review whether the Agreement is valid and binding as an initial matter under the terms of the statute. See 9 U.S.C. § 402(b) ("The applicability of [the EFAA] to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator, **irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically** or in conjunction with other terms of the contract containing such agreement, **and irrespective of whether the agreement purports to delegate such determinations to an arbitrator**."). 9 U.S.C. § 402(b)(emphasis added).  Following that enforceability analysis, the court will consider whether plaintiff's claims fall within the scope of the Agreement.  Finally, the court will address the real area of dispute between the parties: whether plaintiff has plausibly alleged allegations that there was conduct constituting a "sexual harassment dispute" or a "sexual assault dispute" to keep this matter before the court under the EFAA.

### 1. Determination of Applicability

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally. . .should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  Under Pennsylvania law, an agreement is enforceable where: 1) both parties manifested an intent to be bound by the terms of the agreement; 2) whether the terms are sufficiently definite; and 3) whether consideration existed. See Johnson the Florist v. TEDCO Constr. Corp, 657 A.2d 511, 516 (Pa. Super. Ct. 1995).

A review of the terms of the Agreement reflects that plaintiff executed the contract with Defendant Saber Healthcare Group ("Saber"), (Doc. 10-1 ¶ I.), which plaintiff alleges was her "employer, joint employer, co-employer, ostensible employer and/or the agent of [p]laintiff's employer[,]" (Doc. 1, Compl. ¶ 3).  The Agreement also defines "Company" collectively as Saber, "its current or former officers, directors, members, employees, vendors, clients, customers, agents, parents, subsidiaries, affiliated companies, successors, or assigns." (Doc. 10-1 ¶ I.).  Just above the signature lines where plaintiff and a representative from Saber affixed their signatures, bold and capitalized terms state that  "this contract is a binding arbitration agreement which may be enforced by the parties." (Id. ¶ VI).  These terms further provide that the parties "received, read, and […] had

9

sufficient opportunity to consider this agreement" and further understood "that by entering into this agreement," they were "giving up their constitutional right to have any claim decided in a court of law before a judge and a jury or participate in a class action, as well as any appeal from a decision or award of damages." (Id.) Accordingly, the Agreement reflects an intent to be bound.

The terms of the Agreement are also definite. For example, as discussed further below, the Agreement spells out the types of employment disputes that are referrable to arbitration. (Id. ¶ 2). The Agreement also defines the procedures governing the initiation of arbitration and spells out the procedure. (Id. ¶ 5). The Agreement further provides that Saber bears the costs of all arbitration fees and costs except for the filing fee unless an arbitrator concludes the employee proceeded with frivolous factual or legal arguments. (Id.)

Finally, the Agreement is supported by consideration. In this matter, plaintiff signed the Agreement on August 30, 2022, (see Doc. 10-1, p. 4), prior to the date plaintiff alleges she began employment with defendants, (see Doc. 1, Compl. ¶ 42). The initial taking of employment constitutes consideration supporting pre-employment agreements under Pennsylvania law. See Socko v. Mid-Atl. Sys. of CPA, Inc., 99 A.3d 928, 932 (2014), aff'd, 126 A.3d 1266 (2015)(citations omitted). The court thus concludes that the Agreement is valid on its face.

10

**2. Whether Plaintiff's Claims Fall Within the Scope of the Agreement**

Turning next to whether plaintiff's claims fall within the scope of the

Agreement, the terms of the contract provide as follows:

II.   **Covered Claims**

Other than as provided in this Agreement, to the maximum
extent possible under federal law, Employee and Company
agree that any controversy, dispute, or claim arising out of
or related to the Employee's employment with the
Company that could otherwise be raised in Court
("Covered Claim") that the Company has against the
Employee or the Employee has against the Company shall
be settled exclusively by binding arbitration rather than in
court. . .

Covered Claims include, but are not limited to, claims for
wages and other compensation. . .wrongful termination
[claims]. . . claims for unlawful retaliation, discrimination
and/or harassment; and claims for violation of any federal,
state, or other government law, statute, regulation, or
ordinance, such as, for example, claims under. . .Title VII
of the Civil Rights Act of 1964 [and] the Equal Pay Act. . . .

(Id. ¶ II)(formatting modified).

Counts I – IV of plaintiff's complaint assert claims pursuant to Title VII for

harassment, hostile work environment, wrongful discharge/termination, retaliatory

discharge/termination, and compensation discrimination in violation of Title VII.

Counts V – VI assert additional compensation discrimination claims pursuant to

the EPA and PA EPL.  The Agreement covers compensation, wrongful

termination, unlawful retaliation, discrimination, and harassment claims and

claims for violations of Title IV, the EPA, and similar state laws. Thus, plaintiff's claims fall within the scope of the Agreement.

### 3. Whether Plaintiff Has Alleged a Sexual Assault Dispute or Sexual Harassment Dispute

Finally, the court must address whether plaintiff's claims fit within the EFAA. The EFAA provides that "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute. . .no predispute arbitration agreement. . .shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402.

Defendants first argue that the complaint fails to allege a "sexual assault dispute." (Doc. 10, Df. Br. in Supp. at 12 & n. 4; Doc. 14, Reply Br. at 11-12). Plaintiff's counterargument essentially requests that the court expand the definitions set forth by Congress in the EFAA regarding a sexual assault dispute. (See Doc. 13 at 4-5). Plaintiff's argument is not compelling.

The EFAA defines "sexual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact, as such terms are defined in [18 U.S.C. § 2246] or similar applicable Tribal or State law, including when the victim lacks capacity to consent." 9 U.S.C. § 401(3). The cross-referenced statute provides definitions for the title and chapter of the United States Code concerning crimes of sexual abuse. "Sexual act" is defined in this statute as follows:

12

>    **(A)** contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
>
>    **(B)** contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>
>    **(C)** the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>
>    **(D)** the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

18 U.S.C. § 2246(2).

Furthermore, "[s]exual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]" 18 U.S.C. § 2246(3).

Plaintiff alleges that a nursing home resident struck her while she was working. (See Doc. 1, Compl. ¶ 26). Plaintiff, however, does not allege any of the contact or touching contemplated by 18 U.S.C. § 2246(2)-(3) for there to be a "sexual act" or "sexual contact." Consequently, plaintiff's complaint does not allege a "sexual assault dispute" under 9 U.S.C. § 401(3).

The assault by the resident is relevant, however, to the next area of
discussion based on defendants' argument that the complaint fails to plausibly
allege a "sexual harassment dispute" to bring this matter into the EFAA
exception. (Doc. 10, Df. Br. in Supp. at 13-20; Doc. 14, Reply Br. at 2-11).
Plaintiff counters that she has plausibly pled facts supporting a hostile work
environment claim based on her sexual orientation and gender non-conformity.
(Doc. 13, Pl. Br. in Opp. at 4-18).  After careful consideration of the allegations,
the law governing sexual harassment and hostile work environment claims, and
the parties' arguments, the court agrees with plaintiff.

The EFAA defines a "sexual harassment dispute" as a "dispute relating to
conduct that is alleged to constitute sexual harassment under applicable Federal,
Tribal, or State law." 9 U.S.C. § 401(3).  Plaintiff proceeds with claims pursuant to
Title VII, which makes it "an unlawful employment practice for an employer to. . .
discriminate against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such individual's race, color,
religion, sex, or national origin." 42 U.S.C. § 2000e-2.

"Title VII's prohibition of discrimination 'because of ... sex' protects men as
well as women," Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78,
(1998)(citation omitted), and protects people from employment discrimination
based on their sexual orientation and gender identity, see Bostock v. Clayton

14

Cnty., Georgia, 590 U.S. 644, 681 (2020)(holding that an employer who fires

someone simply for being homosexual or transgender has discriminated against

that individual because of such individual's sex in violation of Title VII).

"'Sexual harassment' is conceptually distinct from sex discrimination, but it

can fall within Title VII's sweep." Bostock, 590 U.S. at 669.  Consequently, Title

VII encompasses a prohibition on "requiring people to work in a discriminatorily

hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21

(1993)(citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)).  Put

another way, "[w]hen the workplace is permeated with 'discriminatory

intimidation, ridicule, and insult,'. . .that is 'sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working

environment,' Title VII is violated." Id. (quoting Meritor, 477 U.S. at 65, 67).

To bring a successful claim for a hostile work environment on the basis of

sex under Title VII, a plaintiff must allege: (1) intentional discrimination because

of their sex; (2) the discrimination was severe or pervasive; (3) the discrimination

detrimentally affected the plaintiff; (4) the discrimination would detrimentally

affect a reasonable person in like circumstances; and (5) the existence of

respondeat superior liability. See Mandel v. M & Q Packaging Corp., 706 F.3d

157, 167 (3d Cir. 2013)(citations omitted).  "[A] claim of employment

discrimination necessarily survives a motion to dismiss so long as the requisite

15

*prima facie* elements have been established. That is so because it may be difficult for a plaintiff to prove discrimination before discovery has unearthed relevant facts and evidence." Castleberry v. STI Grp., 863 F.3d 259, 266 (3d Cir. 2017)(citation, quotation marks, and brackets omitted).

Defendants first argue that the complaint is deficient regarding allegations of intentional discrimination because of sex. This argument falls short. Intent need not be pleaded with particularity. See FED. R. CIV. P. 9. ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.") And by pleading that her shifts were assigned to other workers after a heterosexual supervisor told plaintiff that she did not believe in same-sex marriage then the shifts were not available to plaintiff at all following her report to the nursing home administrator about mistreatment, plaintiff has sufficiently alleged facts necessary to meet the intentional discrimination element.

Defendants also argue that plaintiff's complaint fails to plausibly set forth that the discrimination was severe or pervasive enough to constitute sex-based harassment. As explained, "'severity' and 'pervasiveness' are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." Castleberry, 863 F.3d at 264 (3d Cir. 2017)(citations omitted).

"To determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Mandel, 706 F.3d at 168 (quoting Harris, 510 U.S. at 23). "For discrimination to constitute severe or pervasive behavior, it must 'alter the conditions of [the victim's] employment and create an abusive working environment.' " Nitkin v. Main Line Health, 67 F.4th 565, 570 (3d Cir. 2023) (quoting Meritor, 477 U.S. at 67). "[O]ffhand comments[] and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Defendants concede that the remark from plaintiff's heterosexual supervisor about not believing in gay marriage was made based on plaintiff's protected characteristics, that is her sexual orientation and gender identity. They argue, however, that plaintiff's complaint fails to connect the dots from that remark to the alleged hostile work environment. The court must disagree with defendants' assessment. Plaintiff has alleged several incidents and the true "totality of the circumstances" cannot be known until after discovery. Only then can the court truly determine whether plaintiff has established severe or

17

pervasive discrimination to meet the elements of a hostile work environment claim based on sexual orientation and gender identity.

At this juncture in the case, plaintiff meets the elements of her hostile work environment claim with sufficient facts, including sufficient facts about severity and pervasiveness to move forward. The incidents alleged by plaintiff all follow her heterosexual supervisor finding out that plaintiff was engaged to a person of the same sex. Subsequently, plaintiff sustained physical abuse from a resident. That resident then also directed a racial slur at plaintiff two days later. The *responses* by defendants' employees are the relevant facts alleged. Specifically, the physical abuse by the resident was followed by laughter about the incident by the supervisor, cutting remarks by a co-worker, and indifference from the administrator. If "[e]verybody was talking about" the abuse from the resident, as plaintiff's co-worker told her, and laughing about it, as plaintiff observed her supervisor doing, and doing nothing about it, as plaintiff alleges was the administrator's response, then it is plausible that plaintiff's sexual orientation and gender identity were the reasons for those reactions and created the allegedly hostile environment. (See Doc. 1, Compl. ¶¶ 27-32, 38-40). Moreover, when plaintiff tried to discuss this mistreatment at the nursing home, the administrator's indifference about the assault evolved into intimidation, telling plaintiff: "You're going to resign." (Id. ¶ 33). Accordingly, plaintiff has sufficiently pled that the

harassment was severe or pervasive to survive a motion to dismiss.  She has also pled sufficient facts to proceed with discovery to determine whether bias or prejudice toward her sexual orientation and gender nonconformity caused her coworkers and superiors to act in that manner.

Returning then to the question of whether this case is a "sexual harassment dispute," i.e. a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law," see 9 U.S.C. § 401(3), the court concludes that this case falls within the EFAA exception based on the plausibility of plaintiff's hostile work environment claim at this stage. Under the EFAA, the Agreement is invalid with respect to the entire case. See 9 U.S.C. § 402(a) ("no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to **a case** which is filed under Federal, Tribal, or State law and relates to the. . .sexual harassment dispute.")(emphasis added).  Consequently, defendants' motion to move this matter to arbitration will be denied.

**Conclusion**

For the reasons set forth above, defendants' motion to compel arbitration and dismiss plaintiff's complaint (Doc. 10) is denied.  An appropriate order follows.

19

Date: 5/29/24

_____
JUDGE JULIA K. MUNLEY
United States District Court